Sammy SANTIAGO, Plaintiff,

v.

Bryan SEMENZA, Supervisory Deputy U.S. Marshal, Defendant.

No. 95 Civil 4706 (JGK).

United States District Court, S.D. New York.

May 19, 1997.

Sammy Santiago, Metropolitan Correctional Center New York, New York City, pro se.

Mary Jo White, United States Attorney for the Southern District of New York by Sheila M. Gowan, Assistant United States Attorney, New York City, for Defendant.

KOELTL, District Judge.

This action arises out of the alleged use of excessive force by the defendant, Bryan Semenza, against the *pro se* plaintiff, Sammy Santiago, while he was a pretrial detainee during a disturbance in a holding cell area located behind a courtroom in the United States Courthouse of the Southern District of New York. Liberally construed, the complaint asserts a claim pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), for a violation of the plaintiff's constitutional rights under the Due Process Clause of the Fourteenth Amendment. *See Graham v. M.S. Connor,* 490 U.S. 386, 395 n. 10, 109 S.Ct. 1865, 1871 n. 10, 104 L.Ed.2d 443 (1989) ("[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment."); *see also Bell v. Wolfish,* 441 U.S. 520, 535–39, 99 S.Ct. 1861, 1871–74, 60 L.Ed.2d 447 (1979); *Rodriguez v. Phil-*

*lips,* 66 F.3d 470, 477 (2d Cir.1995); *Brown v. Doe,* 2 F.3d 1236, 1242 (2d Cir.1993), *cert. denied,* 510 U.S. 1125, 114 S.Ct. 1088, 127 L.Ed.2d 403 (1994).

The defendant now moves pursuant to Fed.R.Civ.P. 56 for summary judgment dismissing the complaint. For the reasons explained below, the motion is granted.

I.

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs. Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994). "The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Id.* 22 F.3d at 1224.

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. The substantive law governing the case will identify those facts which are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S.

654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *see also Gallo,* 22 F.3d at 1223.

If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). With respect to the issues on which summary judgment is sought, if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. *See Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir.1994).

## II.

For the purposes of his motion, the defendant accepts the plaintiff's version of the facts as true. On or about June 20, 1994, an indictment was unsealed charging the plaintiff, who is an alleged member of the New York chapter of the Latin Kings,[1] with conspiring with nineteen other members of the Latin Kings, to violate, *inter alia,* the RICO statue, 18 U.S.C. § 1962(c), through a pattern of racketeering activity involving the murders of eight individuals and conspiracies to murder three other individuals. (Zabel Decl. ¶ 2.) On June 30, 1994, the plaintiff and approximately nineteen other Latin Kings were placed in a holding cell area located behind a courtroom in the United States Courthouse for the Southern District of New York prior to their arraignment. (Santiago Dep. at 50–53; Def.'s 3(g) Statement ¶ 1.) Deputy United States Marshals escorted the Latin Kings, who were handcuffed behind their backs, from the holding cell area into the courtroom for their appearances in four groups of four or five each. (Santiago Dep. at 65–69.)

After the plaintiff's appearance before a U.S. Magistrate Judge, he was taken back to the holding cell area. (Santiago Dep. at 70.) Upon his return, the plaintiff observed a "mad commotion" in the holding cell area. (Santiago Dep. at 89–90.) The plaintiff saw the defendant arguing with Latin King Jose Gabriel and then with Latin King Nelson

Torres. (Santiago Dep. at 70–73.) The plaintiff approached the defendant and looked at him in order to find out who he was and why he was arguing with the other Latin Kings. (Santiago Dep. at 75.) The plaintiff then sat in a chair where three other Deputy Marshals kept him "secluded from the incident that was taking place." (Santiago Dep. at 78–80.) After sitting down, the plaintiff bent over and slipped his handcuffed hands under his legs bringing them around to his stomach area where he concealed them from the view of the Deputy Marshals who were guarding him. (Santiago Dep. at 93.) During this time period, other inmates in the bullpen were arguing, screaming, "breaking," and banging on the chairs and on the gate. (Santiago Dep. at 83.)

The defendant removed his glasses and approached the plaintiff's chair. (Santiago Dep. at 81, 88–89.) The defendant swung his left hand at the plaintiff, and the plaintiff blocked the defendant with his hands. (Santiago Dep. at 86–87.) The plaintiff "grabbed" the defendant's hand, "locked onto [the defendant's] hands," and they moved together toward a camera in the holding cell hallway. (Santiago Dep. at 94–95.) The defendant swung at the plaintiff a second time, and the plaintiff thinks the defendant hit him in the face, but he did not realize it until three other marshals came running up. (Santiago Dep. at 95.) "Somehow, [the defendant] got away," (Santiago Dep. at 100), and the three other marshals "ran [the plaintiff] into the wall," (Santiago Dep. at 96). The three marshals then escorted the plaintiff out of the holding cell area. (Santiago Dep. at 100.)

According to the plaintiff, he had marks on his wrists from his handcuffs, and bruises under his arms and on his back from being slammed into the wall. (Santiago Dep. at 111–12, 117.) The plaintiff also received a bruise/scratch "like a paper cut" running from his forehead to the middle of his nose, (Santiago Dep. at 110–11), but does not know how, when, or by whom it was inflicted:

> Q. How did you get the scratch with the reddish bruised area on your forehead?

(Zabel Decl. ¶ 4.)

---

1. The Latin Kings are a nationwide organization comprised of individuals of Hispanic origin.

A. I don't recall. I think that was the second blow he gave me in my face on the way running from me.

Q. In this area here (indicating)?

A. Yes.

Q. So he hit you in that area?

A. He hit me probably in that area, because at that time, it was just me and him. So there wasn't none of the other marshals, because none of the other marshals hit me; they just slammed me up against the wall.

I said, "What you doing? Get me off this wall." Because I was going to hit the wall face first.

More likely it was him, because he had to do something for him to get away from me. Had to do something, because he went like that, and I went like that, and I closed my eyes and I don't remember exactly what happened (indicating).

Q. When you say "more likely," is that how it happened?

A. He swang at me there again, yes.

Q. But do you know whether that was when you got the scratch on your forehead?

A. No.

(Santiago Dep. at 112–13.) The plaintiff was examined by a physician's assistant upon his arrival at the MCC New York. The medical records indicate that the plaintiff had a bruise on the inner aspect of his right arm, an abrasion on his right elbow, bruises on both elbows, a bruise on his upper shoulder, and a bruise on his forehead. (Compl.Ex. 1.) The plaintiff received "minor first aid" for these injuries.

### III.

The defendant argues that the plaintiff's claim against him should be dismissed because the plaintiff has failed to demonstrate that his constitutional rights were violated and because the defendant's qualified immunity bars this suit.

### A.

■ The defendant first contends that, even assuming that the plaintiff's version of the facts are true, the plaintiff has not established that the defendant used excessive force in violation of the plaintiff's Due Process rights. The traditional test for determining whether a prison official has used excessive physical force in violation of the Due Process Clause is whether the conduct at issue "shocks the conscience." *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied sub nom. Employee–Officer John, # 1765 Badge Number v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); *see also Rodriguez,* 66 F.3d at 477 (holding that excessive force claims under the Due Process Clause of the Fourteenth Amendment in the non-seizure, non-prisoner context survives *Graham); Cuoco v. Hershberger,* No. 93 CIV. 2806, 1996 WL 648963, at *5 (S.D.N.Y. Nov.6, 1996) (applying the *Johnson* "shocks the conscience" standard in the non-seizure, pretrial detainee context); *Mathie v. Fries,* 935 F.Supp. 1284, 1299 (E.D.N.Y.1996) (same); *Pristell v. County of Sullivan,* No. 91.Civ. 6317, 1996 WL 11210, at *4 (S.D.N.Y. Jan 10, 1996) (same) *Rahman v. Philip,* No. 92 CIV. 5349, 1995 WL 679251, at *4 (S.D.N.Y. Nov.15, 1995), *aff'd,* 104 F.3d 356 (1996) (same). "In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Johnson,* 481 F.2d at 1033; *see also Hudson v. McMillian,* 503 U.S. 1, 6, 112 S.Ct. 995, 998–99, 117 L.Ed.2d 156 (1992); *Whitley v. Albers,* 475 U.S. 312, 320–21, 106 S.Ct. 1078, 1084–85, 89 L.Ed.2d 251 (1986). Whether the prison disturbance is a riot or a lesser disruption, " '[p]rison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.' " *Hudson,* 503 U.S. at 6, 112 S.Ct. at 999 (quoting *Whitley,* 475 U.S. at 321–22, 106 S.Ct. at 1085–86 (quoting *Bell,* 441 U.S. at 547, 99 S.Ct. at 1878)). As explained by Judge Friendly,

The management by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force. Not every push or shove, even if it may later seem unnecessary in the peace .of a judge's chambers, violates a prisoner's constitutional rights.

*Johnson,* 481 F.2d at 1033.

■ In this case, even crediting all of the plaintiff's allegations, the plaintiff has failed to make sufficient allegations or set forth sufficient facts to establish an excessive force claim under the Due Process Clause. According to the plaintiff, the defendant's first attempted blow never made contact with the plaintiff's face because the plaintiff blocked it with his hands, and the plaintiff then grabbed the defendant's hand. An attempted blow does not rise to the level of a constitutional violation. During the ensuing struggle between the plaintiff and the defendant, the plaintiff thinks that the defendant hit him in the face, which may or may not have been the cause of a scratch on the plaintiff's forehead and nose.[2] Taking into consideration the fact that during the struggle, a "mad commotion" was occurring in the holding cell area, and the plaintiff had slipped his handcuffed hands from behind his back so that they were in front of him, the defendant's actions were necessary to secure the plaintiff, safeguard the other marshals, and restore security to the holding cell area. Moreover, there is no indication that the actions of the defendant were so disproportionate to the situation as to constitute a Due Process violation. The plaintiff may or may not have received a bruise/scratch from the defendant during their struggle. In light of the disciplinary and safety concerns created by the plaintiff, and in light of the "wide-ranging deference" to be afforded prison officials in responding to such concerns, the alleged actions of the defendant do not show the requisite malice. *See Cuoco,* 1996 WL 648963, at *6. The defendant's actions thus do not "shock the conscience," *Johnson,* 481 F.2d at 1033, nor do they amount to "punish-

ment" in the constitutional sense. *Graham,* 490 U.S. at 395 n. 10, 109 S.Ct. at 1871 n. 10.

■ Furthermore, although the plaintiff contends that the marshals should have held him outside of the holding cell area until the disturbance was controlled, this is not a complaint against the defendant in this case who only approached the plaintiff after he returned to the holding cell area. In any event, the marshals' decision to bring the plaintiff into the holding cell area cannot be the basis for a finding of a constitutional violation. *See Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986) (concluding "that the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property"); *Davidson v. Cannon,* 474 U.S. 344, 348, 106 S.Ct. 668, 670–71, 88 L.Ed.2d 677 (1986) (holding that "the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials").

### B.

■ The defendant also argues that the plaintiff's claim is barred by the doctrine of qualified immunity. Qualified immunity shields government officials from liability for civil damages when they are sued in their personal capacity as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, insubstantial lawsuits. *See Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir. 1995) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)); *Nocera v. New York City Fire Comm'r,* 921 F.Supp. 192, 203 (S.D.N.Y. 1996); *Malsh v. Austin,* 901 F.Supp. 757, 764 (S.D.N.Y.1995). Government officials performing discretionary functions are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738; *see also Zavaro v. Coughlin,* 970 F.2d 1148, 1153 (2d Cir.1992). Even where

---

**2.** The plaintiff's other injuries were caused by his being slammed against the wall by three other Deputy Marshals, none of whom are defendants in this suit.

the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was "objectively reasonable" for him to believe that his actions were lawful at the time of the challenged act. *See Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987); *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987) (citing *Malley v. Briggs,* 475 U.S. 335, 340–41, 106 S.Ct. 1092, 1095–96, 89 L.Ed.2d 271 (1986)); *Marquez–DeJesus v. Asuega,* No. 86 Civ. 9210, 1989 WL 252647, at *4 (S.D.N.Y. Jan. 9, 1989).

■ In this case, even if the plaintiff's claim could be said to make out a constitutional violation, it was objectively reasonable for the defendant to believe that his actions were lawful during the incident at the holding cell area on June 30, 1994. Although it was clearly established that the use of excessive force by the defendant would violate the Constitution, *see Johnson,* 481 F.2d at 1028; *see also Rodriguez,* 66 F.3d at 477; *Cuoco,* 1996 WL 648963, at *5; *Mathie,* 935 F.Supp. at 1299; *Pristell,* 1996 WL 11210, at *4; *Rahman,* 1995 WL 679251, it was objectively reasonable for an officer in the undisputed factual circumstances faced by the defendant to have concluded that the force he used was warranted and than his acts did not violate the Constitution. Thus, summary judgment for the defendant is appropriate on the grounds of qualified immunity. *See Lennon,* 66 F.3d at 421.

Accordingly, because the plaintiff has failed to demonstrate that his Due Process rights were violated, and because the defendant is entitled to qualified immunity, the plaintiff's excessive force claim is dismissed.

### CONCLUSION

For the reasons explained above, the defendant's motion for summary judgment dismissing the complaint is **granted.** The Clerk is directed to enter Judgment dismissing the action and closing the case.

**SO ORDERED.**